[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 9, 2009
THOMAS K. KAHN
CLERK

No. 07-15511
Non-Argument Calendar
_____

D. C. Docket No. 07-00080-CR-T-24-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAWRENCE L. HOWARD,
a.k.a. G,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 9, 2009)**

Before ANDERSON, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Lawrence Howard appeals his conviction and 240-month sentence for

attempted possession with intent to distribute cocaine. After a thorough review of the record, we affirm.

I. Background

Howard was indicted for attempted possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Prior to trial, the government notified Howard that it intended to seek enhanced penalties under 21 U.S.C. §§ 841(b)(1)(A) and 851 based on Howard's 2002 conviction in state court for possession of cocaine. The government also submitted notice of intent to use Fed. R. Evid. ("Rule") 404(b) testimony from witness Dwayne Floyd that he had engaged in other drug deals with Howard in 2006.

The evidence at trial, viewed in the light most favorable to the government, established the following: On February 13, 2007, while investigating local drug activity, the DEA and a confidential informant ("CI") placed a controlled call – i.e. one monitored by agents – to Dwayne Floyd to arrange the sale of 1.5 kilograms of cocaine. When Floyd arrived at the sale the following day, he was arrested and immediately agreed to cooperate with authorities. As part of this cooperation, Floyd placed a controlled call[1] to Howard and agreed to sell Howard 5 kilograms

___

[1] The initial call between Floyd and Howard was recorded and the jury received a copy of the transcript. Subsequent calls were also recorded and presented to the jury. In addition, agents used a recording device when Floyd and Howard met to exchange the drugs. This recording was submitted to the jury.

2

of cocaine for about $100,000.  As arranged, Floyd met Howard at Floyd's mother's house and the two drove to meet the supplier, an undercover agent posing as a cocaine supplier using fake cocaine.  In the car, Floyd and Howard discussed prior deals; these conversations were recorded on a device Floyd was wearing.  Howard gave Floyd a black bag filled with cash totaling $99,096.  When the supplier arrived, Floyd got out of his car and exchanged the black bag for the fake cocaine.  Floyd told Howard that the supplier wanted to know if Howard was interested in any other deals.  Howard stated he would want more later, "probably the same lick," meaning the same quantity.  Agents then arrested Howard, who informed police that he was a street hustler who sold nickel and dime bags of drugs and had driven Floyd to pick up the drugs.  In a phone call after his arrest, Howard admitted to his brother that he had given Floyd money for Floyd to "get something."

In his testimony at trial, Floyd confirmed Howard's participation in the purchase of five kilograms of cocaine on February 14, 2007.  Floyd also stated that he had engaged in a similar transaction with Howard in 2006, which had occurred at Floyd's mother's house.  With the agreement of the parties, the court gave a limiting instruction regarding Floyd's testimony about the 2006 drug deals with Howard.

3

At the conclusion of the evidence, Howard moved for judgment of acquittal, arguing that the only evidence was Floyd's incredible testimony. The court denied the motion. Howard did not testify or present any witnesses. The jury convicted Howard, finding the amount of drugs involved was five kilograms or more.

The probation officer prepared a presentence investigation report ("PSI"), assigning a base offense level of 32 given the amount of drugs involved. With a criminal history category III, the resulting guidelines range was 151 to 188 months' imprisonment. Based on his prior state convictions, however, Howard faced a mandatory minimum sentence of 240 months' imprisonment under 21 U.S.C. § 841(b)(1)(A). Howard objected to the mandatory minimum sentence and the failure to recommend a reduction under U.S.S.G. 2X1.1 applicable to attempt offenses.

At sentencing, Howard conceded that this court's case law foreclosed his challenge to the enhanced mandatory minimum sentence, but he asserted that it resulted in a significant increase in jail time for a simple possession charge. The court agreed that it was bound by case law. The court then indicated that it was not relevant whether § 2X1.1 applied in light of the mandatory minimum sentence. Nevertheless, the court found that § 2X1.1 did not apply. The court then sentenced Howard to the statutory minimum 240 months' imprisonment. This appeal

4

followed.

II. Discussion

Howard raises three issues on appeal. First, he challenges the admission of Floyd's testimony regarding prior drug deals. Second, he contends the evidence was insufficient to sustain his conviction. Finally, he argues the court improperly determined his sentence. We address each issue in turn.

1. Floyd's Testimony

Howard argues that the court improperly admitted Floyd's testimony about prior drug deals under Rule 404(b) because the evidence was not relevant, it lacked any corroboration, and it was prejudicial.

We review a district court's admission of the evidence for abuse of discretion. United States v. Eckhardt, 466 F.3d 938, 946 (11th Cir. 2006), cert. denied, 127 S.Ct. 1305 (2007).

Under Rule 404(b),

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b). To be admissible under Rule 404(b), "(1) the evidence must be relevant to an issue other than the defendant's character; (2) the act must be

5

established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403." United States v. Matthews, 431 F.3d 1296, 1310-1311 (11th Cir. 2005) (internal quotations omitted).

Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. This determination "calls for a 'common sense assessment of all the circumstances surrounding the extrinsic offense,' including prosecutorial need, overall similarity between extrinsic act and the charged offense, as well as temporal remoteness." United States v. Jernigan, 341 F.3d 1273, 1282 (11th Cir. 2003) (citation omitted). Although the district court has a great degree of discretion in weighing probative value and prejudice under Rule 403, this court has "also recognized that Rule 403 is 'an extraordinary remedy which the district court should invoke sparingly and [t]he balance . . . should be struck in favor of admissibility.'" United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003) (internal citations omitted). The risk of undue prejudice can be reduced by a

6

district court's limiting instruction, and this court will presume the jury followed the court's instructions. United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005); United States v. Wilson, 149 F.3d 1298, 1302 (11th Cir. 1998).

Here, the first prong is satisfied. By pleading not guilty, Howard placed his intent to commit the crime in issue, and the admission of prior acts evidence is relevant to such intent. Matthews, 431 F.3d at 1311. On the second prong, Howard asserts that Floyd's testimony was not corroborated. Credibility, however, is an issue for the jury. United States v. Parrado, 911 F.2d 1567, 1571 (11th Cir. 1990); see also United States v. Lampley, 68 F.3d 1296, 1299-1300 (11th Cir. 1995) (rejecting argument that the witness's credibility rendered his testimony concerning prior drug deals insufficient to show the prior deals occurred). Howard had the opportunity to cross-examine Floyd regarding these prior deals, but he did not do so. Moreover, in his post-arrest statement to police, Howard admitted that he was a nickel-and-dime dealer. This statement arguably corroborates Floyd's testimony that the two engaged in prior drug deals.

As to the third prong, the court properly concluded that the probative value outweighed any prejudice. The events Floyd's described took place only about a year before the instant offense and involved a similar crime with a similar plan. There was no danger that the jury would have been misled or confused by Floyd's

7

testimony. And there was significant other evidence of Howard's involvement in the instant offense through testimony from various DEA agents and local police officers, as well as the audio tapes and recorded phone calls. Moreover, the court's cautioning instruction on the limited use of this testimony cured any potential defect arising from the admission of the evidence. Ramirez, 426 F.3d at 1354.

Finally, the government established Howard's involvement through the testimony of several DEA agents and local law enforcement officers who had been involved in the investigation and through recordings of telephone calls between Howard and Floyd, as well as audio transcripts of their meeting. In light of this evidence, any error in admitting testimony about drug deals in 2006 was harmless. See United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000) (affirming conviction despite Rule 404(b) error when other evidence against the defendant was overwhelming).

2. Judgment of Acquittal

Howard argues that the court should have granted his motion for judgment of acquittal because the only evidence against him came from Floyd, who was not credible.

We review de novo a district court's denial of a motion for judgment of acquittal on sufficiency of the evidence grounds. United States v. Yates, 438 F.3d

1307, 1311-12 (11th Cir. 2006) (en banc). In considering the sufficiency of the evidence, we view all of the evidence "in the light most favorable to the government, with all inferences and credibility choices drawn in the government's favor." United States v. LeCroy, 441 F.3d 914, 924 (11th Cir. 2006), cert. denied, 127 S.Ct. 2096 (2007).

"To sustain a conviction for attempted possession with intent to distribute cocaine, the government must prove beyond a reasonable doubt that the defendant [ ] (1) acted with the kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it; and (2) engaged in conduct which constitutes a substantial step toward the commission of the crime under circumstances strongly corroborative of [his] criminal intent."[2] United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001). "Although mere presence is inadequate to establish guilt, we have held that it is material, highly probative, and not to be discounted." United States v. Gamboa, 166 F.3d 1327, 1332 (11th Cir. 1999).

Here, the evidence established that Howard and Floyd discussed the purchase of drugs, Howard accompanied Floyd to the location where the two were to meet Floyd's supplier, and Howard brought a bag filled with almost $100,000.

---

[2] The jury could infer intent to distribute from the amount of drugs involved. United States v. Madera-Madera, 333 F.3d 1228, 1233 (11th Cir. 2003).

9

The government presented audio tapes of the transactions and phone calls. In addition, the deal was similar to another transaction with Floyd a year earlier in which Howard arranged to purchase drugs from Floyd at Floyd's mother's house. And when arrested, Howard admitted that he was a nickel-and-dime dealer. This evidence established more than Howard's mere presence and was sufficient for the jury to conclude that Howard acted knowingly and willingly and engaged in a substantial step. To the extent Howard contends the evidence was insufficient because it was based on the testimony of an incredible witness, this argument lacks merit. First, the government presented more than Floyd's testimony to establish Howard's involvement. Second, the jury is entitled to determine the credibility of a witness. Parrado, 911 F.2d at 1571.

### 3. Sentencing

Howard argues that the court improperly enhanced his sentence based on his prior state conviction because the state court had withheld adjudication. He concedes, however, that this court has rejected his argument. He further asserts the court erred in determining his offense level without a reduction under U.S.S.G. § 2X1.1.

We review the application of law to sentencing issues de novo. United States v. Robinson, 935 F.2d 201, 203 (11th Cir. 1991). The meaning of the word

10

"conviction" in a federal statute is a question of federal law unless Congress provides otherwise. Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 119, 103 S.Ct. 986, 995, 74 L.Ed.2d 845, 858 (1983).

Under 21 U.S.C. § 841, a person convicted of possession of five kilograms or more of cocaine who has a prior conviction for a felony drug offense is subject to a mandatory minimum sentence of 20 years' imprisonment. 21 U.S.C. § 841(b)(1)(A).

In United States v. Mejias, 47 F.3d 401, 403-404 (11th Cir. 1995), this court concluded that a plea of nolo contendere where adjudication was withheld qualified as a prior conviction for purposes of sentencing enhancements under § 841(b)(1)(B)). Section 841(b)(1)(B) is "analytically indistinguishable" from § 841(b)(1)(A). United States v. Acosta, 287 F.3d 1034, 1037 (11th Cir. 2002). Thus, Mejias requires that Howard's conviction qualifies as a prior conviction for enhancement purposes.

We need not address Howard's claim that he was entitled to a three-level reduction under U.S.S.G. § 2X1.1(b)(1) applicable to attempt offenses. Howard faced a statutory mandatory minimum sentence, which exceeded the guidelines range with or without the reduction. Thus, the statutory mandatory minimum became the new guidelines range, see U.S.S.G. 5G1.1(c)(2), and any error in the

11

calculations was harmless. <u>United States v. Raad</u>, 406 F.3d 1322, 1323 n.1 (11th Cir. 2005).

III. Conclusion

For the foregoing reasons, we AFFIRM Howard's conviction and sentence.