[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16065
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cr-00017-WTH-TBS-1


UNITED STATES OF AMERICA,

                                                              Plaintiff-Appellee,

versus

ENRIQUE BORJA-ANTUNES,
a.k.a. Teodoro Martinez-Jimienez,
a.k.a. Jesus Borcha,

                                                              Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 19, 2013)

Before HULL, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Enrique Borja-Antunes appeals his convictions and total sentence of life imprisonment for 1 count each of possession with intent to distribute 50 grams or more of methamphetamine, and conspiracy to do so, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.  Borja-Antunes raises three issues on appeal.  First, he argues that the district court abused its discretion when it admitted, under Fed.R.Evid. 404(b), evidence of his 1995 federal conviction for possession with intent to distribute methamphetamine.  Second, he argues that the district court abused its discretion when it denied his motion for a new trial.  Third, he argues that the district court erroneously concluded that he had been convicted in 1993 of a state felony drug offense, without which he would not have been subject to a mandatory life sentence.  Upon careful review of the record and the parties' briefs, we affirm.

## I.

Borja-Antunes argues that the district court improperly admitted evidence of his 1995 federal conviction for possession with intent to distribute methamphetamine.  According to Borja-Antunes, we have held that prior convictions that were much less remote in time were inadmissible under Rule 404(b).  He asserts that the error here was not harmless because the government's

remaining evidence of his guilt was far from overwhelming, as it consisted primarily of the testimony of a single co-conspirator.

We review a district court's Rule 404(b) rulings for an abuse of discretion. *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005). Under this standard, we must affirm, even if we might have decided the issue differently, so long as the trial court's decision was not based on a clear error of judgment or application of the wrong legal standard. *See id.* at 1312. Rule 404(b) prohibits the admission of evidence of a person's crimes or other wrongful acts except in certain circumstances. Fed.R.Evid. 404(b). Nevertheless, Rule 404(b) is a "rule of inclusion," and relevant Rule 404(b) evidence "should not lightly be excluded" when it is central to the government's case. *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003). In order to be admissible under Rule 404(b), (i) the evidence must be relevant to an issue other than the defendant's character; (ii) the government must offer sufficient proof for the jury to find by a preponderance of evidence that the defendant committed the act; and (iii) its probative value must not be substantially outweighed by its undue prejudice, and it must satisfy Fed.R.Evid. 403. *Matthews*, 431 F.3d at 1310-11.

A defendant who pleads not guilty to a drug-trafficking offense makes intent a material issue, which the government may prove through qualifying Rule 404(b)

3

evidence absent affirmative steps by the defendant to remove intent as an issue. *United States v. Zapata*, 139 F.3d 1355, 1357-58 (11th Cir. 1998); *see also Matthews*, 431 F.3d at 1311 ("[I]n every conspiracy case, . . . a not guilty plea renders the defendant's intent a material issue . . . ." (quotation omitted)). Similarly, a defendant who presents a "mere presence" defense "forc[es] the government to prove his criminal intent so as to negate any innocent explanation for his presence." *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995). Where an extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating the extrinsic and charged offenses. *Zapata*, 139 F.3d at 1358. Thus, the first prong of the Rule 404(b) test is satisfied where the state of mind required for both offenses is the same. *Id.* Under the second prong, a conviction is sufficient proof that the defendant committed the prior act. *Jernigan*, 341 F.3d at 1282.

Under the third prong of the test, to determine whether the probative value of the evidence is substantially outweighed by its prejudicial effect, a district court must assess all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, and temporal remoteness. *Id.* A similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense. *See Zapata*, 139 F.3d at 1358 (noting

4

that the probative value of extrinsic act evidence is high where the extrinsic evidence is "very similar" to the charged offense as to their "overall purposes," especially where the government's remaining evidence of intent is based in part on witnesses with questionable credibility); *Delgado*, 56 F.3d at 1366 ("[T]he greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice.").  "[E]xtrinsic drug offenses do not tend to incite a jury to an irrational decision." *Id.*

Although the age of a prior offense may depreciate its probity, we have refrained from adopting a bright-line rule regarding temporal proximity because remoteness analyses are so fact-specific that a generally applicable litmus test would be of dubious value. *Matthews*, 431 F.3d at 1311.  Thus, an appellant bears a heavy burden in establishing an abuse of the court's broad discretion in determining if a prior offense is too old to be probative. *Id.*  We have held that, in a prosecution for a "large cocaine deal," the district court did not abuse its discretion when it admitted evidence that the defendant had participated in "small marijuana deals" approximately 15 years before the charged offenses. *See United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995).  Moreover, the significance of the time period since the prior offense is diminished where one was incarcerated for a significant part of that time. *See United States v. LeCroy*, 441 F.3d 914, 926 (11th Cir. 2006) (concluding that the defendant's ten-year-old

5

crimes were not too remote, due in part to the fact that he had spent most of that time in prison and had been released approximately six weeks before the charged offenses).  Finally, a district court's limiting instruction can reduce the risk of undue prejudice.  *See Zapata*, 139 F.3d at 1358.

Even if the evidence meets this test, it still may be excluded if its probative value is substantially outweighed by the danger of confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of evidence.  *See* Fed.R.Evid. 403; *United States v. Edouard*, 485 F.3d 1324, 1344 & n.8 (11th Cir. 2007).  Exclusion under Rule 403 is an "extraordinary remedy," which should be used "only sparingly," and the balance should be struck in favor of admissibility.  *Edouard*, 485 F.3d at 1344 n.8 (quotations omitted).  We therefore view the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.  *Id.*

Borja-Antunes has not met his burden of showing that the district court committed a clear error of judgment when it admitted his 1995 conviction.  *See Matthews*, 431 F.3d at 1311-12.  The conviction satisfies the first two prongs of the Rule 404(b) admissibility test, because: (i) Borja-Antunes placed his intent at issue by pleading not guilty and setting forth a "mere presence" defense, *see Matthews*, 431 F.3d at 1311; *Zapata*, 139 F.3d at 1357-58; *Delgado*, 56 F.3d at 1365; and (ii)

6

the conviction was sufficient proof that he committed the prior act, *see Jernigan*, 341 F.3d at 1282.

Borja-Antunes has not established error with respect to the third prong for several reasons.  First, the prior offense is highly probative due to: (i) the similarities between the two offenses—both of which involved the intent to distribute similar amounts of methamphetamine, and (ii) the fact that the government's remaining evidence of intent was based in large part on the testimony of Borja-Antunes's co-conspirator Jose Solorio, a witness with questionable credibility.  *See Zapata*, 139 F.3d at 1358.  Second, we have approved of prior bad acts that were approximately 15 years old, even though the type and amount of drugs involved were different, whereas here, a similar amount of the same controlled substance was involved in both offenses, the prior of which occurred approximately 15 and one-half years before the instant offense and approximately 16 and one-half years before the start of trial.  *See Lampley*, 68 F.3d at 1300.  Third, Borja-Antunes spent approximately five of those years in prison, which diminishes the significance of the length of that period.  *See LeCroy*, 441 F.3d at 926.  Moreover, testimony regarding the prior conviction was brief, and nothing in the record suggests that it resulted in confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of evidence.  *See* Fed.R.Evid. 403; *Edouard*, 485 F.3d at 1344 & n.8.  Finally, the district court's

7

limiting instruction reduced the risk of undue prejudice. *See Zapata*, 139 F.3d at 1358. Accordingly, Borja-Antunes has not shown that the district court abused its discretion when it admitted his 1995 conviction.

## II.

Borja-Antunes argues that the district court erred when it denied his motion for a new trial because the evidence was insufficient to support the jury's verdict. He asserts that the government's primary witness was "an admitted liar and perjurer," and "[n]o reasonable jury would have found [him] guilty based on the evidence at trial but for the evidence of [his] bad character."

We review a district court's ruling on a Fed.R.Crim.P. 33 motion for a new trial for an abuse of discretion. *United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005). In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor. *United States v. Friske*, 640 F.3d 1288, 1290-91 (11th Cir. 2011). A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt. *Id.* at 1291. The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be

8

drawn from the evidence presented at trial. *Id.* When the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction. *Id.*

To sustain a conviction for conspiracy to possess with intent to distribute a controlled substance, the government must prove beyond a reasonable doubt that: (i) an illegal agreement existed; (ii) the defendant knew of it; and (iii) the defendant, with knowledge, voluntarily joined it. *See Hernandez*, 433 F.3d at 1333. Participation in a conspiracy can be inferred from "a development and collocation of circumstances." *Id.* (quotation omitted). Although mere presence at the scene of a crime is insufficient to support a conspiracy conviction, it is a probative factor which the jury may consider in determining whether a defendant knowingly and intentionally participated in a criminal scheme. *Id.*

To sustain a conviction for possession with intent to distribute a controlled substance, the government must establish: (i) knowledge; (ii) possession; and (iii) intent to distribute. *United States v. Mercer*, 541 F.3d 1070, 1076 (11th Cir. 2008). The government may prove possession by showing actual or constructive possession. *Hernandez*, 433 F.3d at 1333. Constructive possession exists when a defendant has ownership, dominion, or control over an object itself or dominion or

control over the premises or the vehicle in which the object is concealed.  Intent to distribute may be inferred from the amount of the drug involved.  *Id.*

On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict, but rather may weigh the evidence and consider the credibility of the witnesses.  *Id.* at 1335.  If the court concludes that, despite the abstract sufficiency of the evidence, it preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict and grant a new trial.  Id.  However, where a jury's verdict was reasonable, the district court may not reweigh the evidence and set aside the verdict "simply because it feels some other result would be more reasonable."  *Id.* at 1336.  Motions for new trials based on the weight of the evidence are not favored, and courts are to grant them sparingly and with caution, doing so only in those really exceptional cases.  *Id.* at 1336-37.  Thus, courts have granted new-trial motions based on the weight of the evidence only where the credibility of the government's witnesses had been impeached and the government's case had been marked by "uncertainties and discrepancies," e.g., where there was no direct proof of guilt and the government's case depended upon compound inferences drawn from uncorroborated testimony of questionable credibility.  *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985).

10

The district court did not abuse its discretion when it denied Borja-Antunes's motion for a new trial. First, the evidence was sufficient to support Borja-Antunes's convictions. The jury was entitled to find the existence of agreement to possess with intent to distribute methamphetamine and that Borja-Antunes knowingly and voluntarily joined it, based on Solorio's testimony that: (i) he drove Borja-Antunes to Atlanta for the purpose of picking up one pound of methamphetamine; and (ii) the two returned to Georgia with the methamphetamine hidden under the hood of the truck and later divided it between them. *See Hernandez*, 433 F.3d at 1333. The jury also was entitled to find that Borja-Antunes knowingly possessed with intent to distribute 50 grams or more of methamphetamine based on the same testimony, as well as: (i) expert testimony that chemical tests established that a total of 443.7 grams of methamphetamine was recovered; and (ii) the testimony of a government agent regarding Borja-Antunes's prior involvement in methamphetamine distribution. *See Mercer*, 541 F.3d at 1076; *Hernandez*, 433 F.3d at 1333.

Second, Borja-Antunes has not shown that this was an exceptional case in which the evidence preponderated sufficiently heavily against the jury's verdict that a serious miscarriage of justice may have occurred. *See Hernandez*, 433 F.3d at 1335-37. Although Solorio's credibility was impeached to some extent, his testimony was corroborated by law enforcement agents and chemical analysts who

11

were directly involved in the investigation, as well as photographs and drugs admitted during trial.  Thus, the government's case did not depend upon compound inferences drawn from uncorroborated testimony.  *See Martinez*, 763 F.2d at 1313.

### III.

Finally, Borja-Antunes argues that the district court erroneously found that he had been convicted of a felony drug offense in Oregon state court in 1993 (the "1993 Case").  He asserts that the government submitted no fingerprints, photographs, or fingerprint expert testimony to satisfy its burden of establishing that he was the subject of that conviction.  Moreover, the name, address, and date of birth of the defendant in the 1993 Case were different that Borja-Antunes's, and there is no indication as to which charges the defendant in that case pleaded.

A defendant convicted under § 841(b)(1)(A) who previously has been convicted of two or more felony drug offenses is subject to a mandatory term of life imprisonment.  21 U.S.C. § 841(b)(1)(A).  After the government files a § 851 information identifying the prior convictions supporting this enhancement, the defendant may deny a conviction by filing a written response.  *Id.* § 851(a), (c); *United States v. Sanchez*, 138 F.3d 1410, 1416 (11th Cir. 1998).  "[T]he United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact," and the defendant has the burden of proof by a preponderance of the

12

evidence on any issue of fact raised by the response.  21 U.S.C. § 851(c)(1), (2); *Sanchez*, 138 F.3d at 1416.

Whether a prior disposition of a state criminal charge is a "conviction" under § 841(b)(1) is a question of federal law.  *United States v. Mejias*, 47 F.3d 401, 403-04 (11th Cir. 1995).  A plea of nolo contendere to a state felony drug charge is a "conviction" under § 841(b)(1), even if adjudication was withheld in state court. *See id.*  Under Oregon law at the time of the 1993 Case, delivery of a controlled substance was a Class B Felony.  *See* Or. Rev. Stat. § 475.992(1) (1992).

We allot substantial deference to the fact-finder in reaching credibility determinations.  *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003). The fact-finder, who personally observes witnesses' testimony, is in a better position than a reviewing court to assess their credibility.  *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).  The resolution of a credibility dispute will not be reversed for clear error unless the testimony is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable fact-finder could accept it.  *Id.*  Similarly, when a defendant testifies in his own defense, the fact-finder may disbelieve his testimony, which may be considered as substantive evidence of his guilt.  *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995).  Thus, when a defendant chooses to testify, he runs the risk that,

13

if disbelieved, the fact-finder might conclude the opposite of his testimony is true. *See id.*

Here, the district court heard evidence from the Government that it determined showed beyond a reasonable doubt that Borja-Antunes was the defendant convicted of the 1993 offense. The Government presented evidence that the defendant in the 1993 Case had the name of Antunes Borja, which is simply a reversal of the order of Borja-Antunes's surnames, and that Borja-Antunes's NCIC report lists "Enrique Antunes Borja" as one of Borja-Antunes's aliases. It also pointed out that the PSI in Borja-Antunes's 1995 conviction, which he did not object to, lists the 1993 conviction as a prior offense. Additionally, in 1993, the defendant's belongings were mailed to "Mavfclia" in Anaheim, a name which is similar to Marphulia, one of Borja-Antunes's sisters listed in the PSI. Although Borja-Antunes denied that his sister Marphulia ever lived in Anaheim, he testified at the hearing that she lived in Corona, which this Court takes judicial notice is located next to Anaheim. And, Borja-Antunes's belongings in this case were mailed to his sister Lucinda in Anaheim. The Government further pointed out that the case file from the 1993 Case contains more than one birthdate for the defendant, and one listed is the same as Borja-Antunes's birthdate given in this case: January 27, 1970.

14

Borja-Antunes testified at his sentencing hearing, denying that he was the defendant in the 1993 case. The district court—which was in the best position to assess his credibility—was entitled to disbelieve him, and, as a result, conclude that the opposite of what he said was true. *See Ramirez-Chilel*, 289 F.3d at 749; *Brown*, 53 F.3d at 314. Borja-Antunes also conceded at that time that he had resided in Oregon, which would place him in the right state for the offense. Finally, the Government presented evidence that the NCIC report on Borja-Antunes lists the 1993 conviction. In light of this evidence, we cannot conclude that the district court erred in finding beyond a reasonable doubt that Borja-Antunes is the same person as the person convicted in Oregon in 1993.

Borja-Antunes's assertion that "it is uncertain to which charges" the defendant in the 1993 Case pleaded is unavailing. Although the 1993 Case documentation is not the model of clarity, it was sufficient for the district court to have determined that it established a felony drug conviction. First, the indictment listed four charges covering two statutory provisions: (i) delivery of a controlled substance, under § 475.992(1); and (ii) possession of a controlled substance, under § 475.992(4). The judgment indicates that a "no contest" plea was entered to "DCS," and a "PCS" charge was dismissed. The district court was entitled to determine that the notations "DCS" and "PCS" in the judgment referred to the charges for delivery of a controlled substance and possession of a controlled

15

substance in the indictment, and that the "no contest" plea to a charge of "DCS" therefore was a plea to delivery of a controlled substance.

AFFIRMED.